United States district court — middle district for Tennessee, civil division

| | | |
|---|---|---|
| David Jonathan Tulis | ) | |
| 10520 Brickhill Lane | ) | |
| Soddy-Daisy, TN 37379 | ) | |
| davidtuliseditor@gmail.com | ) | Case no. |
| (423) 316-2680 | ) | |
| *Plaintiff* | ) | |
| V. | ) | |
| | ) | **Jury trial demand** |
| David Gerragano | ) | |
| Commissioner of revenue | ) | |
| In his personal capacity | ) | **RECEIVED** |
| & in his official capacity | ) | |
| | ) | OCT 1 5 2024 |
| State of Tennessee | ) | U.S. District Court |
| Tennessee department of revenue | ) | Middle District of TN |
| *Defendants* | ) | |

# Affidavit & complaint
# & motion for summary judgment

The man holding office of Tennessee commissioner of revenue is running a shakedown of the public under guise of surveiling drivers for having violated the state's financial responsibility laws. David Gerregano runs an operation that is arbitrary and capricious, developed under color of his office, oppressing plaintiff and harming the people of Tennessee with tens of thousands of criminal prosecutions for alleged violations of a law to which these state citizens are not subject.

1. Mr. Gerregano is using Tenn. Code Ann. § 55-12-201 *et seq* to run what he describes as an "independent" program and "an entirely separate enforcement

mechanism" of the Tennessee financial responsibility law of 1977, Tenn. Code Ann. § 55-12-101 *et seq* ("TFRL" or "Part 1"), to require motor vehicle registrants to obtain insurance or provide other proof of "financial responsibility" ("FR") or "financial security," without being under probation by department of safety and homeland security ("safety" or "DOSHS").

2. Mr. Gerregano, using employees of his co-defendant department, claims the program is required by the TFRL Atwood amendment ("Atwood" or "Part 2") that took effect upon the traveling public Jan. 1, 2017. Defendant Gerregano, under color of office, and his department effectively void and abrogate the TFRL by departmental legislation.

3. Mr. Gerregano and the department ("revenue" or "DOR"), with aid of agents and police statewide in a recent five-year timeframe, created 408,821 criminal convictions (from 2018 to 2022, DOR says) among many, many innocent citizens of Tennessee, apart from law, according to DOR data. Petitioner sues in the public interest to prevent a similar number of criminal convictions in the next five years based on extortionate use of law in favor of the insurance industry, state government, county governments and other parties who have a monetary motive to continue an enriching *status quo*.

4. The general assembly, in approving Atwood in 2015, says "[t]he purpose of this part is to develop and implement an efficient insurance verification program that utilizes the online verification system and data transfer standards for transmitting a full book of business specifications, model, and guide of the Insurance Industry Committee on Motor Vehicle Administration in order to verify whether the financial responsibility requirements of this chapter have been met with a motor vehicle liability insurance policy, and to provide the commissioner of revenue with

the authority to develop, implement, and administer the program" Tenn. Code Ann. § 55-12-202.

5. Defendants reject Mr. Gerregano oversees merely an "insurance verification program *** [to] verify whether the financial responsibility requirements of this chapter have been met with a motor vehicle liability insurance policy." Defendants convert the insurance verification program into something much more — into a mandatory insurance (or cash or bond) obligation upon all Tennessee motor vehicle registrants, outside the scope of Tenn. Code Ann. § 55-12-101 *et seq*, which has as its subject only parties who have been involved in a qualifying accident ($1,500 or more in damage, injury or death) Tenn. Code Ann. § 55-12-104, or a court judgment or conviction.

6. On personal assumed authority, Mr. Gerregano creates a second licensing system for anyone using a motor vehicle. He admits his program is entirely outside the scope of Part 1. He ignores Part 1 prerequisites and exceptions, and relies on false claims about Tenn. Code Ann. § 55-12-139, under which all criminal prosecutions in Tennessee for "no insurance" are filed.

7. Plaintiff owns a 2000 Honda Odyssey, VIN 2HKRL1859YH575510 (the "vehicle"), titled and registered to David Jonathan Tulis TTEE UDT 8 15 22.

8. Defendant injures plaintiff and the general public by disobeying the purpose and limits of the Atwood law. He revokes plaintiff's motor vehicle registration July 21, 2023, on grounds that he doesn't have insurance nor evidence of proof of financial responsibility ("POFR") **EXHIBIT No. 1**. Revocation notice.

9. Nor has plaintiff paid the commissioner of revenue $65,000 cash or purchased a corporate surety bond proof of financial solvency and sent him a copy of the

certificate, which two options the department claims apart from statute are alternate means of showing POFR whereby plaintiff might come into compliance with the law.

10. Mr. Gerregano, acting arbitrarily and capriciously, under coloration of law and in no way in compliance with it, operates a fraud and oppression against plaintiff and 6.34 million other registered motor vehicle owners in Tennessee, with cooperation of his co-defendant agency.

11. Mr. Gerregano's duty, as commissioner of revenue, is to comply with the entirety of TFRL, and recognize the limited, step-'n'-fetch-it role his department plays. His department's role in Part 1 is secondary, taking orders from the department of safety and homeland security ("DOSHS" or "safety"). The financial responsibility infrastructure gives him the electronic insurance verification system ("EIVS") utility created in Part 2, under Atwood.

12. Tennessee's financial responsibility law gives license and tag suspension authority to the safety commissioner, who gives notice to revenue to revoke or suspend a violator's tag and under what conditions such scofflaw may regain the privilege following breach. Safety has charge of driver licenses, motor carrier rules and regulations (Tenn. Code Ann. § 55-50-101 *et seq*), and enforcement of POFR (§ 55-12-101 *et seq*), revenue of registration and certificates of title (Tenn. Code Ann. § Title 55, chapters 1 to 6). Revenue has charge of Atwood, but under orders of DOSHS, acting responsively to safety notices to revoke registration.

13. By law motor vehicle insurance among passenger vehicle owners (private use under privilege) is mandatory upon those required to obtain SR-22 insurance as a condition of retaining, or reinstatement of, a license or who violate TFRL requirements, having acted irresponsibly in a qualifying accident and leaving

injured parties unrestored in their losses. SR-22 is the industry standard under the guidelines of IICMVA, the Insurance Industry Committee on Motor Vehicle Administration, Tenn. Code Ann. §55-12-203. The certificated motor vehicle insurance policies are provided by qualified insurance companies that become the "insurer of record" for each SR-22 insured party. Tenn. Code Ann. §§ 55-12-122 and 210.

14. The Atwood amendment secures the state's interest in surveiling those people who exercise the privilege *on precondition of financial security*. Atwood's EIVS uses data mining and Internet technology to monitor motor vehicle owners with a record of irresponsible use on conditional holding of the privilege.

15. Under misuse of the Atwood law, the state under color of law imposes requirement for proof of financial security on all registrants. More than 5.117 million people purchase and maintain insurance policy coverage. DOR says more than 1 million are "unconfirmed." These "unconfirmeds" are *unwilling* under their right of contract or *unable for poverty reasons* to become customers of motor vehicle insurance sellers. Members of this class of Tennessee citizens face continuing criminal prosecution in state courts.

16. Does the law give defendant's office as commissioner new, independent authority, and fresh standalone power to create a class of liable parties, as defendants allege? Or is Atwood a mere tool the use of which is constrained by definitions, scope and purpose of Part 1, read in *para materia,* with safety department *the judge or cop* and DOR the probation officer, as plaintiff claims?

17. This lawsuit is upon Mr. Gerregano in office and in his person. The commissioner's marching orders in office are laid out in Tennessee law. It demands he be made to cease all activities, those in his person, that have converted

lawful monitoring powers into a wicked and destructive "Eye of Sauron." As his programs, customs, usages and activities are apart from law, they necessarily are sourced in Mr. Gerregano as a man who must be enjoined to desist oppressive acts, to lay aside his pet project of abuse and corporate capture and return into and occupy his office as governed by Tenn. Code Ann. § 55-12-101 *et seq* and 201 *et seq*, in which office he can do no injury to the public, the plaintiff, nor to the law.

18. Co-defendant department is willing to go along with arbitrary and capricious policy, and give it coloration of law, in injury to plaintiff and millions of other Tennesseans oppressed by defendants' fraudulent activity.

## Jurisdiction

19. The court has jurisdiction to hear this case because of the deprived fundamental federal rights, privileges, or immunities involved.

20. This action is a "petition to the [g]overnment for redress of grievances." The breach invokes the 1st amendment to the U.S. constitution applicable to the states and defendant via the 14th amendment, and grants this court power and protections to plaintiff that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

21. The first amendment-protectable rights enjoyment injured by defendant are against plaintiff's free right of movement by car on the public roads in private use for press, religious, assembly purposes, and his free right of movement in commerce, under privilege, for use of the roads for private profit and gain, affecting a public

interest, and necessarily needing to be under privilege, the privilege at issue that of motor vehicle registration, in which plaintiff has a protectable interest.

22. Federal law at 42 U.S.C. § 1983 protects plaintiff against state actor abuse of his federal constitutional guarantees, whereby "Every person who, under color of any *** custom, or usage, of any State *** , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

23. The federal 9th amendment states, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." Defendants disparage, derogate and abrogate plaintiff's disjunctive rights of commerce under state privilege and private use, which right enables many other rights — from freedom of religion to the rights of assembly and open courts — to be enjoyed.

24. Specifics about plaintiff's federal protected rights are:

25. His right to enjoy locomotion and movement in his private automobile, interstate and intrastate, this act criminalized by defendant's agents and privies who refuse to recognize the right of private communication by car, outside the state privilege, in activity on the public right of way constituting enjoyment of personal freedom and liberty. The right of the citizen to travel upon the public highways and to transport his property thereon, in the ordinary course of life and business, is a common right which he has under the right to enjoy life and liberty, to acquire and possess property, and to pursue happiness and safety. It includes the right, in so doing, to use the ordinary and usual conveyances of the day, and under the existing

modes of travel, includes the right to use an automobile upon the highway or to drive under state privilege, available to all.

26. This right is carefully respected by federal transportation regulations that "do not apply to ***[t]he occasional transportation of personal property by individuals not for compensation and not in the furtherance of a commercial enterprise" 49 C.F.R. § 390.3(e)(3), these private users recognized in state law on transportation that "[relieves] existing and future undue burdens upon the highways" from "motor vehicles" and helps "[p]rotect the welfare and safety of the traveling and shipping public *** in their contact with the agencies of motor transportation and allied occupations" while, at the same time, acting to "[p]rotect the property of the state and its highways from unreasonable, improper or excessive use" Tenn. Code Ann. § 65-15-101.

27. Plaintiff's press rights under the federal 1st amendment and under Tenn. const. Art.1, sect. 19, are abrogated in enforcement of defendant's claim that no ingress upon or egress from the public road is lawful and legal whatsoever unless plaintiff's minivan bears a current and validated registration tag subject to administration by DOR of the privilege as a taxable activity, occupation, calling or avocation under Tenn. const. Art 1, sect. 28.[1] He is forbidden to sit behind the steering wheel, and using gas pedal, brake and ordinary caution steer the automobile down the public right of way.

28. Defendants have ensured cooperation of police departments, sheriff's departments, Tennessee governmental entities acting as agents, allies, privies, assigns, and

---

[1] Tennessee has two modes of taxation: *Ad valorem* and privilege. "The Legislature shall have power to tax merchants, peddlers, and privileges, in such manner as they may from time to time direct, and the Legislature may levy a gross receipts tax on merchants and businesses in lieu of ad valorem taxes on the inventories of merchandise held by such merchants and businesses for sale or exchange."

others on taxpayer-funded payrolls to harass, seize, arrest, jail and injure plaintiff if he is found on the road with a revoked tag. Though he may be moving down the road in the automobile in private capacity, he faces arrest, jailing and criminal prosecution under longstanding usage and abusage for being on the road in exercise of press and other federally protected rights.

29. Plaintiff has a federally guaranteed property equitable interest in the tag, as he paid for it in exchange for the privilege for one year, the agreement voided by defendant before the year was over, with $3 left on the year, an illegal taking.

30. The U.S. constitution at article 4, sect. 4, guarantees "to every State in this Union a Republican Form of Government," with the United States unwilling to accept subjugation of the people to a government department serving commercial and financial interests such as those profiting illegally from defendants' policy. Federal intervention is due after plaintiff sent over the course of 14 months three detailed letters to the Tennessee attorney general, Jonathan Skrmetti, and to the Tennessee comptroller of the treasury of Tennessee, Jason Mumpower, who refuse to see corruption in plaintiff's report.

31. This suit is filed with plaintiff conscious of the Younger doctrine that prevents federal courts' intervening in state legal proceedings. The case <u>David Jonathan Tulis v. Department of Revenue,</u> docket no. 23-004, is being conducted by a DOR administrative hearing officer, Brad Buchanan, presumptively under the Tennessee uniform administrative procedures act, Tenn. Code Ann. § 4-5-101 *et seq.*

32. However, the department's court lacks subject matter jurisdiction, and proceedings are a nullity. All hearings in the financial responsibility law are in safety. "[T]he commissioner [of safety] shall administer and enforce this chapter *** and shall provide for hearings upon request of persons aggrieved by orders or acts of the

commissioner [of safety]." Tenn. Code Ann. 55-12-103. UAPA excludes department of revenue. "This chapter shall not apply to revenue rulings and letter rulings issued by the commissioner of revenue." Tenn. Code Ann. § 4-5-106(f).

33. Plaintiff brought up the problem of lack of subject matter jurisdiction in the contested case. Hearing officer Buchanan invited him to dismiss his own action. He declined. He couldn't reasonably make appeal to safety, which had done him no wrong and before which he'd have no standing. Defendants deny plaintiff a remedy with their arbitrary and capricious program.

34. Plaintiff prays the court give relief because the state contest, being void, does not implicate the Younger doctrine of federal noninterference with ongoing state proceedings. The harm of revocation against plaintiff is continuing, and the public welfare is daily damaged by defendants' oppressive acts in fraud and breach.

35. In the event the court determines Younger requires delay until judicial review in Tennessee courts is concluded, plaintiff bases his demand for injunctive relief and a junking of the DOR program upon action directed against a second family car.

36. . Defendants have sent "request for information" letter of inquiry Sept. 27, 2024, under TFRL against plaintiff's Toyota RAV4, under VIN JT3GP10V47044214, in use by plaintiff on the public roads without either an owner's or operator's insurance policy. It is the first four notices, the last being that of revocation. **EXHIBIT No. 2**, DOR inquiry letter.

37. Plaintiff certifies he is not using the court for a harmful, annoying, threatening, demeaning, illicit or harassing purpose. The amount of money at issue exceeds $75,000. Plaintiff moves for a summary judgment as to the law, permanent injunction, equitable compensation for his legal costs, actual money damages,

punitive money damages for malice and bad faith, and an order of injunction upon Mr. Gerregano's person and Mr. Gerregano as commissioner, and injunction upon the department of revenue to cease illegal acts.

## Parties

38. Plaintiff lives in Soddy-Daisy, Tenn., and is an investigative journalist 12 years on the FM airwaves at 107.5 FM Copperhead Radio Network and NoogaRadio Network. He blogs about law, courts and police at DavidTulis.Substack.com and TNtrafficticket.US. He holds a master's degree in English from University of Tennessee, a bachelor's degree in English from University of Virginia, and is married with four grown homeschooled children. He worked 24 years as copy editor at Chattanooga Times Free Press, handling the business section. He sues on his own behalf in his proper person, seeking injunctive relief from defendant to benefit the general public and in the public interest, seeking to halt ongoing irreparable harm.

39. Mr. Gerregano is a man who lives in Nashville with a wife and two children. Gov. Bill Haslam appointed him revenue commissioner in 2016, and Gov. Bill Lee reappointed him January 2019. An attorney trained in law, Mr. Gerregano started working in the agency in 1997. He has held numerous legal administrative posts such as hearing officer, general counsel, assistant commissioner and deputy commissioner administering Tenn. Code Ann. § Title 67, taxes. He is served at his residence at 829 Forest Acres Drive, Nashville, TN 37220.

40. Defendant department of revenue is a state agency that may be served at 500 Deaderick St., Nashville, Tenn. 37242.

## Abstract

41.     This lawsuit has no material facts in dispute. It is a matter of law controlled by familiar rules of statutory construction. Does Atwood's EIVS insurance verification surveillance run *concurrently* with TFRL as an independent authority, as defendant says, or *consecutively* for a probationary purpose, as an enforcement mechanism only, subject to Part 1 definitions and initiatory authority of department of safety? This case challenges defendant's no-filter use of the EIVS "insurance verification program ('James Lee Atwood Jr. law')" that he, using agents under color of law, admits runs contrary to TFRL. EIVS' purpose is to verify insurance among fewer than est. 3,000 souls surveiled to keep license or tag privilege reinstatement on condition. Mr. Gerregano uses EIVS *ultra vires* to force 6.34 million vehicle registrants into insurance (with 42 parties opting for bonds) — or be revoked. Having had no qualifying accident, plaintiff is not subject to TFRL. Plaintiff meets the exception in § 55-12-106 (13) "An owner or operator of any vehicle where there is no physical contact with another vehicle or object or person, unless a judgment has been obtained." Nor is he subject to being scorched by defendants' automated "Eye of Sauron" revocation system. Atwood's sect. 214 says "Nothing in this part shall alter the existing financial responsibility requirements in this chapter." Defendant ignores this provision in departure from the rule of law.

## Relevant fact background

42. Plaintiff is not under a court judgment or administrative suspension. He has an excellent driving record. He owns the Honda Odyssey minivan registered under plate No. 774BGWC as a motor vehicle that has not been involved in an accident

qualifying him to become subject to TFRL. **EXHIBIT No. 3.** No accident affidavit.

43. Mr. Gerregano revoked the vehicle's registration on July 21, 2023, for plaintiff's lack of insurance coverage or because he has not shown defendant or agents' proof he sent the commissioner a $65,000 check to use the public roads, or purchased a bond for $65,000 in the insurance markets covering his uninsured personally used automobile/motor vehicle. (Such corporate bonds are nowhere available for a private car owner seeking a pre-accident bond for that amount, according to plaintiff's market research in effort to comply.)

44. Plaintiff files notice of appeal July 26, 2023, or thereabouts demanding (1) restoration of his tag, and (2) cessation of the *ultra vires* Atwood program that arises from official misconduct and continuing irreparable harm to his protected state and federal rights. Included in his filing is "Administrative notice [o]n Tennessee law requiring proof of financial responsibility after roadway accident," to put Mr. Gerregano on awares about the disabilities in the Tenn. Code Ann. §§ 55-12-101 and 201 *et seq* and court cases supportive of the plaintiff's cause.

45. Plaintiff is suing the department to be able to use his private car as a motor vehicle, per 18 U.S.C § 31. Definitions (6) Motor vehicle.- "The term '**motor vehicle**' means every description of carriage or other contrivance propelled or drawn by mechanical power and used for commercial purposes on the highways in the transportation of passengers, passengers and property, or property or cargo. \*\*\* " (emphasis added).

46. Plaintiff is not in the transportation business. Still, his suit in the contested case intends to make his automobile once again "commerce ready" for use as a motor vehicle, and "useable for commercial purposes," pursuant to 18 U.S.C § 31.

Definitions. "(10) Used for commercial purposes.-The term 'used for commercial purposes' means the carriage of persons or property for any **fare, fee, rate, charge or other consideration**, or directly or indirectly in connection with any business, or other **undertaking intended for profit**" (emphasis added).

47. It should be judicially noticed that police officers and sherriff's deputies eagerly stop any automobile that is not registered as a motor vehicle, and allege that the person overseeing such automobile is a criminal.

48. The power in state law to revoke a registration plate belongs to the commissioner. § 55-12-104, § 55-12-114, § 55-12-12, § 55-12-127. Defendant Gerregano's official revocation power over registrations is unmistakable.

49. "The registration and fees provided for registration shall constitute a privilege tax upon the operation of motor vehicles." Tenn. Code Ann. § 55-4-101(a)(2). Mr. Gerregano defends his actions to prevent plaintiff's right to commercial activity under privilege as proper policy and pursuant to law.

50. In the contested case defendants defend DOR policy using a mix of law and opinion.

      i.   Tenn. Code Ann. **§ 55-5-117(b)** — "Nothing in chapters 1-6 of this title shall be construed to affect or change the power of the commissioner to revoke motor vehicle registrations under the

financial responsibility law in chapter 12 of this title." [2]

ii.     Tenn. Code Ann. **§ 55-12-139(a)** — "This part [3] shall apply to every vehicle subject to the registration and certificate of title provisions."

iii.     Tenn. Code Ann. **§ 55-12-210(a)(1)** — "If there is evidence based on either the IICMVA model or the full book of business download process described in § 55-12-207 that a motor vehicle is not insured, the department of revenue shall, or shall direct its designated agent to, provide notice to the owner of the motor vehicle that the owner has thirty (30) days from the date of the notice to provide to the department of revenue:

---

[2] Curiously, defendant's suspension notice to plaintiff cites § 55-5-117. Suspension or revocation of registration, certificates or plates, parts (1) - (5), omitting reference to (b).

> (a) The department is authorized to suspend or revoke the registration of a vehicle or a certificate of title, certificate of registration, or registration plate, or any nonresident or other permit in any of the following events:
>
> > (1) When the department is satisfied that the registration or that the certificate, plate, or permit was **fraudulently or erroneously** issued;
> > (2) When a registered vehicle has been **dismantled or wrecked;**
> > (3) When the department determines that the required **fee has not been paid** and the same is not paid upon reasonable notice and demand;
> > (4) When a certificate of registration, registration plate or permit is knowingly **displayed upon a vehicle other than the one for which it was issued**; and
> > (5) The commissioner shall be empowered to suspend the permit or right of any **nonresident** under any reciprocal agreement executed under § 55-4-121 if the nonresident is found to have violated any of the laws of this state regulating motor vehicles.
>
> (b) Nothing in chapters 1-6 of this title shall be construed to affect or change the power of the commissioner to revoke motor vehicle registrations under the *financial responsibility law* in chapter 12 of this title.

Tenn. Code Ann. § 55-5-117  (emphasis added)

[3] Part 1 Tenn. Code Ann. § 55-12-101 *et seq.* Section 139 is about compliance with the financial responsibility mentioned in previous sections.

i. "(A) The owner or operator's proof of financial security in a form approved by the department of revenue *** "

iv. **Tenn. Op. Atty. Gen. No. 03-084 (Tenn.A.G.).** The opinion states that it limits its coverage to situations in which insurance is used as proof of financial responsibility following a "first bite" qualifying accident. [4]

v. **Legislator statements**

51. The hearing officer, sitting in place of the commissioner, in an order denying temporary injunction, bases a defense of the program on Tenn. Code Ann. § 55-12-210 and the word "shall," as in, "the department of revenue shall, or shall direct its designated agent to, provide notice to the owner of the motor vehicle that the owner has thirty (30) days from the date of the notice to provide to the department of revenue: (A) The owner or operator's proof of financial security in a form approved by the department of revenue" etc.

---

[4] "This Opinion concerns the standards for showing evidence of financial responsibility **when an insurance policy provides the driver with coverage**." Tenn. Op. Atty. Gen. No. 03-084 (Tenn.A.G.), 2003, p. 2 (emphasis added).

Atwood surveils whether insurance is being used to meet a vehicle registrant's financial responsibility requirements that are imposed under circumstances covered by Part 1. Part 2, sects. 202 (Purpose of part) and 204 say Atwood is for ***verification*** only, and only as required for POFR. Safety determines that requirement in Part 1.

(a) The commissioner of revenue shall develop, implement, and administer an insurance verification program to electronically **verify** whether the financial responsibility **requirements of this chapter** [chapter 12] have been met with a motor vehicle liability insurance policy.

§ 55-12-204. Motor vehicle insurance; electronic verification program; commissioner duties (emphasis added)

52. The word "shall" in that provision makes the department its subject, with no compulsive energy directed toward plaintiff. To prevent any confusion as to whether Atwood alters the financial responsibility landscape, the general assembly tacks a prohibition onto the end of the statute. "Nothing in this part shall alter the existing financial responsibility requirements in this chapter." Tenn. Code Ann. § 55-12-214.

53. Part 1 of TFRL controls the monitoring activity of EIVS established in Atwood, Part 2. **EXHIBIT No. 4,** Affidavit on facts regarding Tennessee financial responsibility law, unrebutted by defendants

# Background of financial responsibility & Atwood law

54. In Tennessee, driving and operating a motor vehicle are privileges. The privilege is connected with the use of a car as a motor vehicle for the purpose of private profit and gain. All privilege is premised on commercial gain, using in some way the public infrastructure or affecting the public interest. The state has authority through its regulation of commerce on the road through its carrier statute at Tenn. Code Ann. § Title 65, chapter 15, carriers,, and through its motor vehicle regulation at Tenn. Code Ann. § Title 55 to condition the use of these public roads and protect public property.

55. TFRL operates on subject parties using automobiles as motor vehicles who have an accident, and who have proved themselves careless users of the road or irresponsible in their obligations to make good upon another party following accident damage, injury or death. It operates on people who are suspended for other reasons, such as DUI. Applicants for driver licenses agree to comply with it in case of accident. Tenn. Code Ann. § 55-12-138. Certificates and certification. [5]

---

[5] People applying for a driver license vow to obey TFRL *when* required.

56. In TFRL the state intervenes against the scofflaw who thinks he or she can get away with injuring others — using the people's roads and a state privilege – without making recompense for injuries ("willfully fails, refuses or neglects to make or have filed an accident report" Tenn. Code Ann. § 55-12-104. Accident reports). Such concept of virtue, in the name of the public, the state imposes by law upon the necks of subjects liable always, pursuant to Part 1 and Part 2 surveillance, to be able to show POFR.

57. The workload dealing with these after-accident or post-judgment lawbreakers is carried by two main state agencies. The first is safety, headed by commissioner Long, a Gov. Bill Lee appointee. The second is revenue, managed by the defendant, also serving at the Gov. Lee's pleasure under commission and boss of defendant department.

58. Part 1 provides four proofs of financial responsibility following an accident, with commissioner references being to safety.

> (1) Filing of written **proof of insurance coverage** with the commissioner on forms approved by the commissioner;
>
> (2) The deposit of cash with the commissioner of no less than the amount specified in § 55-12-102, **or in the total amount of all damages suffered, whichever is less,** subject to a minimum deposit of one thousand five hundred dollars ($1,500);

---

> The commissioner of safety, with each application for an operator's or chauffeur's license, shall include a brief summary of the state's financial responsibility law and the summary shall contain the following or similar certification to be signed by the applicant: "I CERTIFY THAT I UNDERSTAND ABOUT TENNESSEE'S FINANCIAL RESPONSIBILITY LAW AND I AGREE TO ABIDE BY IT."

Tenn. Code Ann. § 55-12-138. Certificates and certification

(3) The **execution and filing of a bond** with the commissioner of no less than the amount specified in § 55-12-102, **or in the total amount of all damages suffered**, whichever is less, subject to a minimum bond of one thousand five hundred dollars ($1,500); or

(4) The submission to the commissioner of **notarized releases** executed by all parties who had previously filed claims with the department as a result of the accident.

Tenn. Code Ann. § 55-12-105 (emphasis added)

59. A proof is made necessary upon the individual registrant who has an accident with $1,500 or more in damage, bodily injury or death. The person in a qualifying accident "shall report the matter in writing to the commissioner within twenty (20) days after the occurrence of the accident" Tenn. Code Ann. § 55-12-104. "If a report of the accident is not received by the commissioner of safety within twenty (20) days, *** the commissioner may issue a notice of suspension of the operator's license and, immediately upon request by the commissioner of safety, the commissioner of revenue shall issue a notice of suspension ***. Notices of the suspension of the operator's license and the motor vehicle's registration shall be sent by United States mail not less than twenty (20) days prior to the effective date of suspension."

60. The licensee/registrant is given notice that he or she has a right to a pre-revocation hearing in safety. The law respects due process rights by providing for contested case hearings for "persons aggrieved by orders or acts" of safety under Tenn. Code Ann. §§ 55-12-103, 104. Hearings are pursuant to the state's uniform administrative procedures act at Tenn. Code Ann. § Title 5, chapter 4.

61. Part 1 has 42 sections, describing how a qualifying crash brings a driver, operator or owner into the state's corrective notice. A party who proves responsibility does so by showing the commissioner of safety, by any of the four proofs, that he is

being responsible for his role in the crash. A party that is irresponsible following a motor vehicle crash suffers loss of his privileges from the department of safety. Safety handles the driver license under chapter 50 of Title 55.

62. The TFRL says that when a motorist loses his license for failure to prove financial responsibility, safety gives notice to revenue which immediately suspends the registration of any and all cars connected with that registered owner. Tenn. Code Ann. §§ 55-12-105, 114.

63. The law expresses the general assembly's goodwill toward members of the public who keep a lookout while driving and are safe and cautious. [6] Tennessee does not consider use of automobiles as dangerous. Government secures the public's health, safety and welfare, and intends no harm or obstruction against the rights of any innocent person. TFRL operates in the public interest to safeguard the innocent traveler or driver on the roads and secure resolution following accidents by those exercising the privilege. EIVS operates upon violators, whether of TFRL, DUI laws or rules of the road (reckless driving). These parties must have SR-22 insurance or other POFR as a condition precedent to the reinstatement of privilege.

64. Part 2 of the law is the Atwood amendment with 15 sections. It puts the department of revenue front and center as an enforcer in the financial responsibility regime, but still behind DOSHS and subject to notices and directives from safety. "The commissioner of revenue shall develop, implement, and administer an **insurance verification program** to electronically verify whether the financial responsibility **requirements of this chapter** have been met with a

---

[6] "Although it is not universally so held, it is well settled in this State (and by the numerical weight of authority in other jurisdictions), that an automobile is not, in law, an inherently dangerous instrumentality, and a driver is bound to exercise only ordinary care in its operation, or that degree of care or caution which an ordinarily careful and prudent person would exercise under the same circumstances." Elmore v. Thompson, 14 Tenn. App. 78 (1931)

motor vehicle liability insurance policy." § 55-12-204. The reference to "chapter" is the whole of the legal infrastructure of TFRL that stands undisturbed by Atwood, and "insurance verification" intends to be understood as the means to verify if insurance is the means whereby a party subject to the chapter has POFR via insurance policy.

65. The technology surveillance tower raised by Atwood over the motoring landscape is EIVS. The giant eyeball follows industry standards set by IICMVA, short for Insurance Industry Committee on Motor Vehicle Administration. At least it's supposed to. Tenn. Code Ann. § 55-12-203 Definitions. Atwood also is to have been created and to operate with National Association of Insurance Commissioners ("NAIC") standards in view. Atwood creates a digital relationship between approved automobile liability insurers under Tenn. Code Ann. § 55-12-203 that meet program requirements, Tenn. Code Ann. § 55-12-205, which state the program shall "be an accessible common carrier based system for online electronic verification and data transfers of proof of motor vehicle liability insurance."

66. The EIVS system is to be an "an insurance verification program to electronically verify whether the financial responsibility requirements of this chapter have been met with a motor vehicle liability insurance policy" Tenn. Code Ann. § 55-12-204. The program does not give police officers authority to make an insurance check upon the motoring public. "[A]n officer shall request evidence *of financial responsibility as required by this section*."

67. TFRL applies to the "owner, operator, or both," not to motor vehicle, Tenn. Code Ann. § 55-12-105, deposit of security; proof of security. In a qualifying accident, the owner, operator or both is liable to perform, not a motor vehicle. Tenn. Code Ann. § 55-12-104, accident reports.

68. A motor vehicle policy subject to EIVS is certified. Atwood's purpose is "to verify whether the financial responsibility requirements of this chapter have been met with a ***motor vehicle liability*** **insurance policy** \*\*\* ." § 55-12-202 (emphasis added). "The fact that liability policy was on file and approved by insurance department does not make policy a 'certified policy' under financial responsibility law." McManus v. State Farm Mut. Auto. Ins. Co., 463 S.W.2d 702, 705 (1971). Officers have authority upon suspendees, who have prospective-looking coverage. "(d)(1) In order to reinstate a driver license after suspension or revocation, if the person did not have a restricted license issued under subsection (b), or was not eligible for a restricted license, the person shall provide *proof of financial responsibility prospectively for a length of time equal to the length* of time for which the suspension or revocation was in effect" Tenn. Code Ann. § 55-12-114. Even for suspendees, requirement of POFR has a time limit. "(e) The department of safety may release a person's requirement to provide proof of financial responsibility after the expiration of the period of suspension or revocation" Tenn. Code Ann. 55-12-114(e). Suspension or revocation of registrations; proof of financial responsibility (emphasis added).

69. DOR admits in deposition it built the EIVS program by itself. "The department of safety shall cooperate with the department of revenue in developing, implementing, and maintaining the program" Tenn. Code Ann. § 55-12-209, Authorized use of program; commercial automobile insurers; annual reports.

70. Motor vehicle insurance; electronic verification program; commissioner duties. The program was to have been created "in accordance with IICMVA specifications and standards." The law envisions "*multiple data elements* to make insurance verification inquiries more accurately." These include:

(A) The automobile liability insurer's NAIC code;

(B) Vehicle identification numbers;
(C) Insurance policy numbers or policy key;
(D) The date of the verification request; and
(E) And "other **data elements** as set forth in the most recent version of the IICMVA Model User Guide."

§ 55-12-205. Program requirements (emphasis added)

71. The department's EIVS program refuses to "effectuate the purposes of this chapter" and refuses to "[w]ork in conjunction with existing state programs" § 55-12-205, program requirements, namely TFRL.

72. The EIVS goal is for law enforcement and state agencies to freely "[s]end requests to automobile liability insurers for verification of evidence of financial responsibility via online services established by the automobile liability insurers" in compliance with IICMVA standards. Tenn. Code Ann. § 55-12-205(8). Police departments are given "reasonable access" to the system to "verify [POFR] *as required* by § 55-12-139." Tenn. Code Ann. § 55-12-205(c) (emphasis added).

73. Key in defendant's claims to be acting within the law is sect. 210, Uninsured motor vehicles; notice to owner; failure to provide proof of insurance; fees and penalties.

74. The word "shall" creates a duty solely on DOR (Sect. 210). Defendants say it creates a liability upon plaintiff. Defendants cannot rely on Sect. 210 as its last provision makes reference to vehicles with an "insurer of record" and drops coverage becoming "eligible" for notice. [7] Such are parties liable to performance

---

[7] (g) If the vehicle is no longer insured by the automobile liability insurer of record and no other insurance company using the IICMVA model indicates coverage after an unknown carrier request under § 55-12-205(3), the owner of the motor vehicle becomes eligible for notice as described in subsections (a) and (b).

to be able to show POFR, not merely owners and operators who are not insurance company customers.

75. Defendants use too few search parameter components to comply with the law and avoid injury to plaintiff. The result is overbroad, *ultra vires* administration. If DOR's EIVS division, overseen by Jennifer Lanfair and managed by Shawn Ploss, with a state-paid staff of 17 under them, had more data points, or better data points, this lawsuit would not have been necessary.

76. The financial responsibility division (FR) with the department of Safety and homeland security is tasked with administering the financial responsibility law that involves suspending/revoking/cancelling and restoring driving privileges while maintaining all driver records.
https://www.tncourts.gov/sites/default/files/docs/TN%20Department%20of%20Safety%20Court%20Reporting%20%26%20Reinstatement%20Procedures.pdf

77. The controversy between plaintiff and Mr. Gerregano is whether his revocation of plaintiff's tag is lawful or on his own personal authority, using agents. Plaintiff doesn't have POFR, except a safe driving record, because he is not among people liable for performance under TFRL, and not in the category of registrant who under Atwood is the only group subject to "mandatory insurance."

78. Even if he had an operator's or owner's policy, it would not meet the statutory standards of motor vehicle liability insurance policy as proof of financial responsibility, not being certified. Tenn. Code Ann. § 55-12-122.

---

Tenn. Code Ann. § 55-12-210

79. With calculation based on current numbers, defendant Gerregano on Jan. 1, 2017, imposed pretended legal duty on a **2,821-fold increase of liable registrants** under color of Atwood who, on Dec 31, 2016, one day before, were not subject to TFRL conditions. Defendants claim Atwood expanded monitoring and revocation threat lawfully applied upon est. 3,000 privilege suspendees to 6.34 million registrants, from **0.0473 percent** of all vehicle owners **to 100 percent**, subjecting plaintiff to revocation outside of law, without a hearing prior to Mr. Gerregano's act.

80. Defendants claim Tenn. Code Ann. § 55-12-139 gives authority for state of Tennessee, and its departments of safety and revenue, to impose POFR on all registrants, apart from any qualifying accident.

81. Defendants claim that Part 2, Atwood, alters the existing financial responsibility requirements and enables operation of Mr. Gerregano's scheme. He requires the sensor atop the EIVS tower to be 100 percent open, the eyeball at full stare, glaring down upon the traveling public with every registrant without insurance subject to a four-notice set of stingers ending with revocation for failure to show POFR. His program abrogates and nullifies 28 provisions of law, and is a rogue project, a departure from law. **EXHIBIT No. 5,** Response in opposition to respondent's motion for summary judgment, filed with defendants Sept. 23, 2024

82. The defendant refuses to notice an absolute prohibition of his program in Atwood itself.

> Nothing in this part shall **alter the existing financial responsibility requirements** in this chapter.

Tenn. Code Ann. § 55-12-214. Financial responsibility requirements unaffected (emphasis added)

83. He refuses to notice the absolute bar to revoking and reinstating registration unilaterally in the context of FR. Restoring a POFR-suspended tag is "unlawful" "unless the written approval of the commissioner of safety is obtained prior to the reregistration" Tenn. Code Ann. § 55-12-130, which bar defendants disobey.

84. He has altered requirements under the law arbitrarily and capriciously, injuring plaintiff and hundreds of thousands of Tennesseans in a criminal oppression that operates daily in continuing irreparable harm upon the public in Tennessee.

85. At least 28 conflicts in law Mr. Gerregano creates show him in breach of law, which rules of statutory construction starting with the doctrine of *generis ejusdem* show falsity beyond the harms suppressed by the recent abolition of the "Chevron deference" in <u>Loper Bright Enterprises et al v. Gina Raimondo,</u> 603 U.S. __ (2024).

86. Defendant uses two data points to revoke tags. He uses vehicle identification numbers ("VIN") and insurance policy contracts to send revocation notices in a totally automated process, with no person under his employ making a determination as to the relevant facts, exemptions or other details of plaintiff or any other revoked person. The key omitted data point is whether the person is on record in department of safety's financial responsibility division, since initiatory authority in TFRL is in the hands of that department. These points would include unsatisfied "judgment or judgments resulting from the accident that may be recovered against the operator, owner, or both" Tenn. Code Ann. § 55-12-105.

87. That DOSHS division has record of registrants subject to the tag revocation treatment. These are people who after accident violate requirements of TRFL. Other high-risk drivers and motor vehicle owners have conditional privilege because of DUI or Title 55 roadway violations such as reckless driving.

88. In his office defendant Mr. Gerregano claims he operates EIVS pursuant to license plate fraud law in chapter 5 of the Tennessee code. He has authority to revoke tags for fraud at Tenn. Code Ann. § 55-5-117, which covers (1) fraudulent issuance, (2) wrecking of vehicle, (3) unpaid fee, (4) display on wrong vehicle or (5) nonresident dispute, a chapter pertaining to theft. None of these provisions are relevant as basis for department action against plaintiff, but this law is cited in registration revocation letter to plaintiff fraudulently under color of law, sent to him by the U.S. mails.

89. After-accident parties in Part 1 must have security and show financial responsibility, as the name of the law indicates, following a judgment from the commissioner of safety of a qualifying accident.

90. Licensees and registrants under probation must show financial responsibility as a condition of reinstatement or retention of the privilege. Only those probationers with insurance policies are to be surveilled under Part 2 by EIVS' unblinking gaze. Atwood's purpose is to *verify* insurance as required for POFR, and not to require POFR. Financial responsibility/security is defined in Part 1 and subject to the commissioner of safety as to when it's required. Safety's financial responsibility division maintains records of those required. Revenue must consult with safety. Tenn Code Ann. § 55-12-204 and § 55-12-209(b). "The department of safety shall cooperate with the department of revenue in developing, implementing, and maintaining the program."

91. People required to have insurance in Tennessee are high-risk drivers who obtain policies with SR-22 certificates sent by the insurer to department of safety showing their fulfillment of duty as monitored under Atwood surveillance. Drivers under chastisement, prodded toward improved morals, are subject to requirement

for proof of financial security for up to five years, after which time they regain the right to drop insurance. Tenn. Code Ann. § 55-12-126. [8]

92. As the name of the law implies, the duty of a person to show "responsibility" operates into the facts surrounding a qualifying accident or judgment in which the party exercising the state motor vehicle privilege must show him- or herself responsible. The law's spanking powers are not upon good people — but the bad.

93. The controversy is over defendant's pretense that he has lawful power in office as commissioner to compel plaintiff to have proof of financial security at all times while traveling or driving, *even though there is no accident for which he must show personal responsibility.* It is personal activity or departmental policy of defendants the court is asked to halt as a matter of law, there being no facts in dispute.

## Counts of harm

94. Plaintiff reviews the above as general harm as against him, the people, and the law itself, and hereinafter specifies the injuries imposed by defendants upon plaintiff and upon the 7 million people in Tennessee, most all of them dependent on the use of automobiles for their livelihoods and the exercise of rights. Unconfirmed registrants — future defendant victims for criminal charge, towing of their cars per sect. 139 — number 1.025 million as of June 2023, DOR says.

---

[8] Except for suspensions under § 55-12-115, and the proof required as provided in § 55-12-114, a person who is required to provide proof of financial responsibility shall maintain that proof for the period of the revocation or suspension.

Tenn. Code Ann. § 55-12-126

# 1. <u>Oppression</u>

95. Plaintiff incorporates the foregoing material in ¶¶ 1 to 94 by reference, and adds further harm as identified in Tennessee criminal law at § 39-16-403, official oppression. This act occurs when "[a] public servant *acting under color of office or employment commits* an offense who:

> (1) Intentionally subjects another to mistreatment or to arrest, detention, stop, frisk, halt, search, seizure, dispossession, assessment or lien when the public servant knows the conduct is unlawful; or
>
> (2) Intentionally **denies or impedes** another in the exercise or enjoyment of any right, privilege, power or immunity, when the public servant **knows the conduct is unlawful**.

§ 39-16-403. Official oppression (emphasis added)

96. As oppressor, defendant Gerregano knowingly and intentionally pursues an illicit course of action that subjects plaintiff to "mistreatment or to arrest" pursuant to tag revocation that the "public servant knows" is unlawful, and that any seizure against plaintiff in use of his auto would be done by agents, allies, privies and supporters in law enforcement complying with his arbitrary policy. Defendant policy "denies and impedes" plaintiff's federally protected 1st amendment press and assembly rights "when the public servant knows the policy is unlawful."

97. This lawsuit seeks civil remedy personally from defendant Gerregano and his estate, restitution and restoration of law, with plaintiff reserving the right to seek punishment under criminal complaint in Davidson County if civil courts are unwilling to give relief.

98. In oppressing plaintiff, Mr. Gerregano under color of law brings his department and state of Tennessee into the oppression of plaintiff and the citizenry, using his colleagues, subjects, employees, assigns and allies on the state payroll, making the state itself part of oppression.

## 2. <u>Official misconduct</u>

99. Plaintiff incorporates the foregoing material in ¶¶ 1 to 98 by reference, and adds further harm in that defendant Gerregano is involved in official misconduct. His *ultra vires* use of EIVS technology, illegal surveillance and lawless revocation of properly obtained license plates relates to this public servant's office or employment that and such combination of acts "constitutes an unauthorized exercise of official power," such acts done "under color of office or employment that exceed[] the public servant's official power." He "[v]iolates a law relating to the public servant's office or employment." § 39-16-402. Official misconduct.

100. Mr. Gerregano's actions, uncorrected by Gov. Bill Lee nor Attorney General Jonathan Skrmetti, involves state government in his oppressive acts and its employees, to the harm of the state itself, namely employees Jennifer Lanfair, Shawn Ploss, contractor i3 Verticals and Camille C. Cline (BPR No. 031065), the latter employed to serve him as senior associate counsel, Mrs. Cline and perhaps others of these parties knowingly and intentionally upholding oppression upon the public.

101. Part of defendants' official misconduct is the federal crime of mail fraud. Defendants use the U.S. mails to send 6,000 revocation process notices every Monday, and 6,000 every Wednesday, according to testimony by Mrs. Lanfair.

102.    Defendant under color of his high office is using agents to utilize the U.S. mails in violation of 18 U.S. Code § 1341 - Frauds and swindles, to injure plaintiff in his federally protected interests, having "devised [a] scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises *** for the purpose of executing such scheme or artifice or attempting so to do, [and who] places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service *** to whom it is addressed[.]" The fraud operated out of his EIVS section, apart from law, joins him in support of oppressive acts by first-class letters, the cost of the stamp borne by Tennessee taxpayers.

## 3. **Extortion**

103.    Plaintiff incorporates the foregoing material in ¶¶ 1 to 102 by reference, and adds further harm of being subject to extortion, which occurs when "a person *** uses coercion upon another person with the intent to (1) [o]btain property, services, any advantage or immunity; (2) [r]estrict unlawfully another's freedom of action[.]" Tenn. Code Ann. § 39-14-112. Extortion.

104.    Defendant Gerregano considers plaintiff's refusal to have insurance as a wrong against his employer, the state of Tennessee, and co-defendant department, and damaging of the state's peace and tranquility, an injury to the people and a continuing threat.

105.    Defendant Gerregano intends to injure him with arrest in use of his car if plaintiff doesn't comply with his demands. He threatens by agents to have plaintiff cited or jailed using his car after revoking his tag illegally, saying he will cease restricting plaintiff's freedom of action if only he will (1) become a customer of an insurance company by buying a motor vehicle liability policy under § 55-12-102

Definitions, which plaintiff, in poverty and unemployed, cannot afford, or (2) remit a $65,000 check to him that by law could only be paid to the commissioner of safety. Tenn. Code Ann. § 55-12-112 deposits, or (3) "[executing] and filing of a bond with the commissioner [of safety]" for $65,000, which bond is impossible to acquire.

# 4. <u>Theft of time, resources</u>

106.   Plaintiff incorporates the foregoing material in ¶¶ 1 to 105 by reference, and adds further harm that defendants under color of office and without law forbid plaintiff from using his minivan in any way, telling him the movement of the auto down the public right of way is forbidden, even if plaintiff is not "using," "driving" or "operating" the Honda Odyssey minivan as a motor vehicle or instrumentality of commerce.

107.   Defendants deny a line down the pavement exists between private use (for pleasure and exercise of rights) and privileged use (for private profit and gain, for pay, compensation, carrying people as passengers and goods as paying cargo in transportation). The prohibition of any enjoyment of the private property, for which the privilege tax was current at time of revocation, with $3 left unused in the year duration of the fee, is a harm and injury to plaintiff, an illegal taking.

108.   Defendants further have cost plaintiff time and money in having to assert his rights in <u>David Jonathan Tulis v. Department of revenue</u> in a contested case. Beginning June 28, 2023, he has logged 822.05 hours studying the law, analyzing the case with colleagues, drafting briefs and motions, preparing for conferences, preparing for oral arguments in support of motions. Given his credentials, educational and professional background and the quality of his legal work, he values time spent in the contested case through Sept. 30, 2024, at **$369,923**, that

being his legal fee, under affidavit. Other costs, and continuing litigation, would be extra and apart from actual or punitive damages.

109.   Hereinabove, unless something escapes plaintiff, are the injuries imposed upon plaintiff by defendant department and by defendant Gerregano in his person, arbitrarily and capriciously, and outside of any law, for which he ought to know better, being a practicing, licensed attorney authorized by the Tennessee supreme court in the practice of law. Plaintiff is confident that the harms done might be undone pursuant to law and equity, as follows:

# Relief requested

110.   In light of the foregoing, given the law and the facts, plaintiff demands the court make a finding of fact and law so that defendants be enjoined to lay all other matters aside and halt misuse and evil oppression of using EIVS outside the scope of the law by operating it without the filter as required in the Tennessee financial responsibility law of 1977, or Part 1.

Plaintiff demands findings:

111.   Of law that EIVS' current surveillance protocol halt immediately, with defendants (1) redacting the fields that constitute the search pattern of EIVS so that (2) EIVS findings of "unconfirmed" be limited to parties subject to POFR requirement who let lapse a motor vehicle liability insurance policy after they had agreed to have SR-22 certified policy to maintain license and tag while under suspension.

112.   Of fact that the absence of a qualifying accident involving petitioner in his motor vehicle is dispositive of his claims not to be subject to TFRL under Tenn. Code Ann. § 55-12-104.

113.    Of law that defendants' use of EIVS apply not to noncustomers of the insurance industry, but only to *motor vehicle liability policy* holders. The only policy required by Tenn. Code Ann. § 139 that the deputy or police officer verifies is one certified pursuant to the IICMVA standard for mandatory insurance, namely the SR-22 liability policy, the certificate containing "the necessary information [filed] with the commissioner on a certificate or form approved by the commissioner [of safety]," Tenn. Code Ann. § 55-12-137, which form is used by revenue, sect. 210(a)(1)(A) and sect. 211(a)(3))A), "The owner or operator's proof of financial security in a form approved by the department of revenue," which form is required of those people under privilege suspension that must be kept handy to show the officer as continuing proof of financial responsibility, and which form must be submitted, along with renewal fees, if applicable, "[w]henever a license or registration is suspended or revoked and the filing of proof of financial responsibility is made a prerequisite to reinstatement of the license or registration," Tenn. Code Ann. § 55-12-129, if time is due for renewal of the license or registration.

114.    Of law-and-fact that in violation of Tenn. Code Ann. §§ 55-12-139, 55-12-201 and 55-12-210 defendants are administering the statute beyond its scope, that administration violates the command to establish an "efficient insurance verification program," Tenn. Code Ann. § 55-12-202, one that "[verifies] whether the financial responsibility requirements *of this chapter* have been met with a motor vehicle liability insurance policy," Tenn. Code Ann. § 55-12-204 (emphasis added), wherein current practice generates false positives among registrants not subject to either TFRL nor amendment utility, therein adding to department payroll, mail and other overhead costs, while injuring complainant in his rights, and others in like standing, and that defendants must cease all activity that

prevents the program from working efficiently and regularly to prevent what is happening to petitioner from occurring upon others.

Further, plaintiff demands the court make findings of law that:

115. Defendants must forthwith, if not sooner, use EIVS under filter pursuant to Tenn. Code Ann. § 55-12-202 to alert defendants of people whose policies are motor vehicle liability insurance policies, per Tenn. Code Ann. § 55-12-122, that under TFRL are required to be certified, per Tenn. Code Ann. § 55-12-102, "(7) 'Motor vehicle liability policy' means an 'owner's policy' or 'operator's policy' of liability insurance, **certified** as provided in § 55-12-120 or § 55-12-121 as **proof of financial responsibility,** and issued, except as otherwise provided in § 55-12-121 by an insurance carrier duly licensed or admitted to transact business in this state" (emphasis added), of such parties required under record from DOSHS' financial responsibility division to carry such coverage for conditional use of the privilege.

116. Defendants are obligated, in verifying insurance as POFR, to use "the data elements that the department of revenue *** and automobile liability insurers have agreed upon and are necessary to receive accurate responses from automobile liability insurers" Tenn. Code Ann. § 55-12-206.

117. Defendants' administration of Tenn. Code Ann. § 55-12-210 must comply with Part 1 of TFRL, delimiting the scope of Part 2, with the four notices served on the owner of a "motor vehicle *** not insured" whose duty and agreement to carry insurance or other POFR is known to the department under certificate and who has violated terms of his suspension by ceasing payment to his "liability insurer of record" and as such is "eligible for notice," as follows: "(g) If the vehicle is no longer insured by the automobile liability insurer of record and no other insurance

company using the IICMVA model indicates coverage after an unknown carrier request under § 55-12-205(3), the owner of the motor vehicle becomes eligible for notice as described in subsections (a) and (b)" Tenn. Code Ann. § 55-12-210(f).

118.   Department notices under Tenn. Code Ann. § 55-12-210 are insufficient and misleading and that they be clarified to show that they apply only to suspendees who for reason that need to be stated in particular in personalized notice are required to have certified policies current with their insurance carrier but who do not have such policy, and are thus in jeopardy of losing the driving and operating privilege, said notice needing to confirm that the party has failed to show financial responsibility following a judgment, conviction, court order, or administrative determination as to the duty to have POFR, to which duty the notice recipient agreed. Defendants are directed in notice to explain how TFRL works from Part 1, explain that Atwood is the enforcement utility, that suspendee is in jeopardy of loss of privilege, and state the duration of the suspension, giving date of release. Tenn. Code Ann. §§ 55-12-114,  55-12-116 and 55-12-126.

119.   Notice will make clear that POFR obligation is for no longer than five years, or the duration of the suspension. Tenn. Code Ann. § 55-12-114. Notice will state that once the suspension ends, the person is released of any and all requirement to maintain that proof of financial security or financial responsibility, the release statement being made IN ALL CAPITAL LETTERS or in **bolded letters** that the registrant is free to have insurance coverage, or not, Tennessee being an after-accident voluntary insurance state, the law coercing no one to do business with any company or concern.

120.   DOR consult and cooperate with DOSHS per Atwood law Tenn. Code Ann. § 55-12-204 and regularly uses its financial responsibility division resources. Tenn.

Code Ann. § 55-12-204.

121.  DOR use the records kept by DOSHS financial responsibility division to make only those persons with a *motor vehicle liability policy* on record subject to sect. 210 inquiry and revocation notice.

122.  DOR inform DOSHS that in remediation it must release from the requirement of POFR any person who was required to have POFR because that person didn't have POFR under the false reading of Tenn. Code Ann. § 55-12-139.

123.  Since DOR is to monitor each person with *motor vehicle liability policy* under Tenn. Code Ann. § 55-12-122(c), and since defendant agency sends out 6,000 notices each Monday and 6,000 each Wednesday, mostly in error, defendant staff and agency contractor i3 Verticals shall begin the process of restoration for past wrongful notice, based upon random selection of registrants present and former erroneously revoked, in the interest of maintaining quality of public service during the reformation.

124.  DOR inform DOSHS of its compliance with law and request DOSHS reinstate any driver license suspended or revoked for above said reason, or non-payment of court cost thereof.

125.  Defendants reinstate any registration so suspended or revoked, free of fines or fees, and reimbursement of monies paid for said registration.

126.  Department and contract personnel be trained by having familiarity with financial responsibility infrastructure of TFRL Part 1, that all personnel understand the POFR duty is on parties who have failed to show good behavior in

the use of the privilege, whether following qualifying accident or other Tenn. Code Ann. § Title 55 breach of rules of the road.

127. Notices, videos, memos, class lectures, social media posts, public service announcements and other remediation and correction updates be created and promulgated to Tennessee highway patrol and law enforcement agencies across the state so that they administer Atwood using EIVS according to law upon those parties required to have insurance or other POFR, those under suspension and conditional use, and no other.

128. Such communications with statewide law enforcement agencies must indicate that the motor vehicle of the POFR-liable person is subject to towing only if there is a local ordinance or provision allowing that to be done. Tenn. Code Ann. § 139(c)(4).

129. Defendant department create, or request to be created by another, an office of master to oversee reformation of the financial responsibility section, which party will give notice to the county clerk and courts in Hamilton County, where plaintiff lives, that its past enforcement of TFRL is in error, and without authority, and that the office of master deal with a court record notification process serving citizens in all counties and oversee concessions state of Tennessee makes to people falsely criminally charged and convicted, either by jury, bench trial or by a plea bargain under law misapplied in breach of their rights in abuse of the peace and tranquility of the state and the people.

130. Department be commanded to use this master, and his/her office and staff, to heal the breach between plaintiff and the balance of people in the state's other 94 counties where police, sheriff's departments, the Tennessee highway patrol, other LEAs and defendants by agency abuse, harm and injure the people of Tennessee,

so that defendant agency's 22-yearlong abuse of Tenn. Code Ann. § 55-12-139 since 2002 and its seven-year abuse of Atwood since Jan. 1, 2017, in cooperation with others, might be undone and the honor, dignity and civil records of falsely convicted people be restored, as equity and justice might require.

131.   The master be authorized by this order to consult with the commissioner, the speakers of the state house and senate, the governor's office, the state comptroller, the attorney general's office and others as to a protocol for Tennesseans to follow in making application for redress, in the form of an equitable one-time payment or other just compensation for distress, harm, false report, inconvenience, humiliation defendants have caused, using authority lawlessly imposed, in use of police power exercise by law enforcement agencies in every county.

132.   Defendants issue a public statement regarding sect. 139, used as basis in every criminal prosecution, "that the 2003 Attorney general opinion on TFRL concerns only instances when insurance is used as proof of financial responsibility and Tenn. Code Ann. § 55-12-139 does not require proof of financial responsibility of anyone not under duty by the department of safety and homeland security to provide proof of financial responsibility because of an earlier accident or judgment." Such publicity will provide a contact for any person convicted under and aggrieved by former policy under Tenn. Code Ann. § 55-12-139.

133.   Defendants, in cooperation with DOSHS, revise the statement required of applicants of driver licenses pursuant to Tenn. Code Ann. § 55-12-138, certificates and certification, that says the TFRL summary "shall contain the following *or similar* certification to be signed by the applicant" (emphasis added). The update shall state: "I certify that I understand that if I am involved in a qualifying accident under the Tennessee financial responsibility law of 1977, I agree I will abide by this law."

Further, plaintiff demands that —

134.   Defendants be required to arrange for publicity, advertising and mass social media communications about defendants' effort to heal the breach its program has caused among the people of Tennessee, so that the people of Tennessee might be put on awares about the wrong done them, and restitution offered by defendant and state of Tennessee in good faith and in sorrow.

135.   The general assembly be consulted as to funding for this program of notice, reparation, restitution and healing, as to advertising, media outreach and compensation or reimbursement for damaged men and women among the "free people" of Tennessee, as they are called in Tenn. const. art 1, sect. 24.

136.   Defendants petition the general assembly, as necessary, for accelerated means to allow for free, easy-to-obtain expungement of any record connected with a registration tag or plate revocation or suspension under the rescinded policy, and that court charges and fines that are fruit of criminal charges stemming from a tag revoked by defendants be sought, tallied, separated and expunged *en masse* and *in toto*.

137.   In light of the court's finding of law and fact, that plaintiff's motor vehicle registration be restored upon payment of the annual fee, starting the day of the administrative judge's final order, as the registration expired July 2023, with the commencement date of the one-year period of privilege being the date of the order; and that a roughly $3 unpaid balance be prorated out of the amount of privilege tax due.

138.   That plaintiff's second personal vehicle, receiving notice of pending revocation for it not being covered under a motor vehicle liability policy, be removed from

any list for receipt of such notices, as its owner is not eligible to receive them.

139.   Defendants on receipt of affidavit of plaintiff's billable hours and expenses in this case pay his reasonable attorney fee.

140.   That defendants cover the $369,923 cost for the 822.05 hours plaintiff spent defending his rights through Sept. 30, 2024, and other costs that will be shown to have accrued in the department contested case <u>Tulis v. DOR</u>.

141.   That a jury be seated to hear plaintiff's claim against defendant Gerregano personally and lawbreaking state of Tennessee that they, having acted in malice and bad faith since petitioner's July 2023 filing of administrative notice and his contested case notice, refused to halt wrongdoing on his notice of the law and must remit to plaintiff $7 million in punitive damages, or whatever amount jury members think is fair for the harm caused and the good done by plaintiff on their behalf in the public interest.

Finally, plaintiff pleads —

142.   That the court act in all haste to consider this complaint, as it brings into view an extraordinary and bold breach of law and hence harm to the rights of millions of Tennesseans, injurious particularly to the poor who are daily at the mercy of police and deputies who criminally charge them and seize their cars under defendants' policy though they have done no evil nor violated a law. Defendants' harm is indeed criminal, irreparable mass injury on a great scale for which plaintiff pleads for an order forthwith requiring compliance with Tenn. Code Ann. § 55, chapter 12, Parts 1 and 2.

Further the affiant sayeth naught.

Respectfully submitted,

*David Jonathan Tulis*

David Jonathan Tulis

STATE OF TENNESSEE, COUNTY OF HAMILTON — I, the undersigned Notary Public, do hereby affirm that David Jonathan Tulis personally appeared before me on the ___8th___ day of ___October 2024___, and signed this affidavit as his free and voluntary act and deed.



_Danyell B. Sluc_

Notary Public

# EXHIBITS

1. Department of revenue revocation notice of 2000 Honda Odyssey minivan
2. Department "request for information" notice Sept. 27, 2024, for 1999 Toyota RAV4, vehicle set for revocation as not covered under insurance policy
3. Plaintiff no-accident affidavit
4. Affidavit on facts regarding Tennessee financial responsibility law, filed in the contested case
5. Tulis Response in opposition to respondent's motion for summary judgment, filed Sept. 23, 2024, in contested case vs. defendants

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing above, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

CERTIFIED MAIL

7022 0410 0002 2445 0234

David Tulis
c/o 10520 Brickhill La
Soddy-Daisy, TN 3737
3773



Retail

U.S. POSTAGE PAID
PM
HIXSON, TN 37343
OCT 08, 2024

37203

$20.35

RDC 03                    S2324H500485-10



RECEIVED
OCT 15 2024
U.S. District Court
Middle District of TN

U.S. District Court Clerk
719 Church Street
Nashville TN 37203